BLANCHE, Justice.*
Petitioner, Willie Spain, sought a writ of habeas corpus in the 19th Judicial District Court, the purpose of which was to obtain a judgment ordering the Louisiana Parole Board to remove a detainer which it held against him as a parole violator. The trial judge granted the writ in favor of Spain and we granted the state’s application for a writ of certiorari in order to review the correctness of that decision.
Willie Spain was convicted of attempted simple burglary in 1975 and was sentenced on April 11, 1975 to serve four years in the custody of the Louisiana Department of Corrections. He was paroled on August 11, 1976. By the terms of the parole, Spain was to “remain within the limits of Baton Rouge, Louisiana until April 4, 1979; or until other action may be taken by this Board of Parole.” The parole was also contingent upon a number of other conditions specified in the Certificate of Parole.
On July 20, 1978 Spain was arrested and charged with two counts of distribution of phencyclidine, the offenses being alleged to have occurred on September 11, 1977 and October 11, 1977. The sales are alleged to have been made to a narcotics officer in Baton Rouge.[1] On July 24, 1978, four days subsequent to this arrest, the Department of Corrections placed a detainer on Spain, requested a warrant from the Parole Board to confirm the detainer, and tentatively scheduled a preliminary hearing to consider the question of revocation of Spain’s parole. Notice of the hearing was sent to Spain on July 25,1978.[2] Spain indicated on the form that he wanted a hearing. The preliminary (pre-revocation) hearing was then duly held on August 9,1978. At its conclusion, Spain signed a request which stated:
“If the Parole Board votes to have me returned to the institution for a revocation hearing, I request that such hearing be deferred until disposition of the open charges against me. I understand that I will be held without bond until my revocation hearing.”
Two persons, the hearing examiner (agent) and the parole officer in charge of Spain’s case, signed as witnesses to Spain’s signa *382 ture. Spain does not dispute that he signed the request.
The finding by the hearing agent, made in his subsequent report to the Parole Board, was that “probable cause is established that [Spain] violated conditions of his parole as alleged.” The report is dated September 1, 1978. This report with the agent’s recommendation that parole be revoked and the request which Spain signed were sent to the Parole Board at the same time.
On September 14, 1978, the Parole Board issued a warrant for Spain as a parole violator and sent him the following letter:
Dear Mr. Spain:
After reviewing the report of violation and a summary of the preliminary revocation hearing held in your case, the Parole Board has voted to return you for a revocation hearing.
However, at your request, the Parole Board will not order your return for a revocation hearing until the disposition of the charges against you. If you are convicted on new felony charges your parole will be automatically revoked by law without a hearing by the Parole Board. You may request to be returned for a revocation hearing at any time [sic] by writing Mrs. Sybil Fullerton, Chairman of the Parole Board, at the above address. You will be held in jail on our warrant. If you are not convicted, but if your parole is revoked for other reasons, you will be given credit for time served in jail on our warrant.
If you are convicted, your time in jail will be credited to your new sentence, and you will not be given jail time credit on your paroled sentence.
Probable cause has been found that you have violated the following conditions of your parole:
[The letter then specifies the charges pending against Spain.]
Sincerely,
Sybil Fullerton, Chairman
Board of Parole
Spain was held in the East Baton Rouge Parish jail, without bond, on the two distribution charges because he was ineligible for bond while the detainer was in effect. R.S. 15:574.4(I)(1). Spain has remained in the jail awaiting disposition of the drug charges since that time. He never requested that the Parole Board return him to Louisiana State Penitentiary for the revocation proceedings.
In October, 1979, Spain filed the Application for Writ of Habeas Corpus with which we are here concerned. In that application and the proceedings which followed, Spain alleged and argued that he was being held illegally because, by its own terms, his parole period would have terminated on April 11, 1979 (R.S. 15:574.6)[3]; therefore, he should be bondable on the pending charges of distribution of a controlled dangerous substance, and the court should order that his parole had terminated without either a revocation having taken place, or any revocation proceedings having been initiated properly so as to permit further action to revoke and return him to prison to serve out his first (and at this point only) sentence.
Following a hearing in the 19th Judicial District Court, the judge made this ruling:
“No authority has been cited or found which authorizes a parolee to consent to an extension of his parole term. If such authority is inherent, it would be limited to a reasonable amount of time. Cf. State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974); State v. Bell, 324 So.2d 451 (1975). Such a request executed conditionally and without assistance of counsel cannot reasonably be considered an effective consent to an UNLIMITED and UNCERTAIN extension *383 of the parole term when such has an immediate and in this case continuing impact upon liberty.
“The analogous situation in probation revocation proceedings is persuasive. See State v. Martens, 338 So.2d 95 (La.1976) and compare the analogous provision of La.R.S. 15:575.6 with C.Cr.P. art. 898 and La.R.S. 15:574.9(C) with C.Cr.P. art. 899.
“Even when a probation proceeding is INITIATED within the probationary period a hearing must be provoked within a ‘reasonable time’ following the initiation. See State v. Martens, supra and State v. Jones, 285 So.2d 231 (La.1973). Parole, of course, is less judicially supervised; this does not commend a lesser standard than probation.
“Without statutory authorization, this court cannot conclude that the uncoun-seled ‘request’ for an indefinite delay authorizes the parole board to extend the parole term. This is especially so in light of the significant present and potential impact on liberty and the absence of direct judicial supervision. Creation of consensual extended parole terms more properly addresses itself to the prerogative of the legislature.
“That petitioner did not request a hearing appears no longer relevant since the parole term has expired and a revocation hearing was not initiated within a reasonable time of the expiration.
ORDER
“For the foregoing reasons, the writ of habeas corpus is granted and the state through the Board of Parole is ordered to remove the detainer lodged against Willie Spain, applicant.”
Spain also has argued before this Court that, by analogy to the probation statutes[4] and the jurisprudence thereunder (particularly Martens and Jones, supra), we should apply similar reasoning in this instance and find that he should be released.
The premise of the court below that Spain consented to an extension of his parole term is, in our opinion, incorrect. What Spain requested was that no revocation hearing be held until final disposition of the charges pending against him. Though there is no statutory mandate specifically permitting or requiring a parolee to make such a request, not only is there no prohibition against such a request, but it appears to be a reasonable exercise of the Parole Board’s administrative power. In this manner, a precipitous decision may be avoided and, should a parolee be found not guilty of the subsequent crime(s) charged, a more equitable and just disposition can be made by the Board relative to revocation of the parole. In Spain’s case, the Board’s response in the letter of September 14 correctly informed him of all consequences to himself and of the revocable nature of the request at any time of Spain’s choosing. In this way he could avoid any delay, yet, if he were to choose to invoke a delay in order to await a favorable disposition of the pending charges, his parole would not be jeopardized to the same extent. Meanwhile, the Board, by issuing a warrant and holding the preliminary (pre-revocation) hearing, had initiated the revocation proceedings prior to the expiration of the parole term, in compliance with the requirements of R.S. 15:574.-9(C).[5] This makes the present case clearly distinguishable from such cases as those relied upon by Spain and by the court below. In those cases, the state failed to initiate proceedings to revoke the proba-tions within the time period mandated by the statute.
R.S. 15:574.9(E) also establishes what shall be the allocation given to the time a parolee is detained pending a trial or disposition on charges placed against him *384 while he is on parole.[6] Since the record in this case does not reflect any disposition on those charges, we cannot say what will be the ultimate allocation as to the time Spain has been detained. We do, however, find that his detention was proper, that it was at his option to end it prior to any disposition of the pending charges, but that he did not take any action. The Board has properly initiated the parole revocation proceedings, and once those have been initiated, Spain cannot claim that his detention is improper. Any delay in final resolution was caused by Spain, not the Board.
For the reasons stated, we find that the ruling of the court below granting the writ of habeas corpus was in error. We find that the Parole Board properly commenced revocation proceedings against Willie Spain and Spain was held in custody under a valid detainer. We therefore reverse the district court and the writ previously granted is hereby recalled, vacated and set aside.
WATSON, J., dissents.
DENNIS, J., dissents for the reasons assigned by district judge.

 Honorable EDWARD A. de la HOUSSAYE, III participated in this decision as Associate Justice Ad Hoc.

. Spain had also been arrested in June, 1977 for carrying a concealed weapon, of which arrest the Parole Board was notified. The Board chose to permit Spain to make bond on that matter and deferred any further action until a disposition would be made as to that charge. The weapon involved was a two-foot-long knife contained in a cane; there was reason to believe Spain did not know there was a weapon concealed in the cane, which had been given to him only shortly before he was stopped by the police.

. The notice contains a specification of the charges against him and also enumerates his rights as an alleged parole violator.

. R.S. 15:574.6. “The parole term, when the board orders a prisoner released on parole, shall be for the remainder of the prisoner’s sentence, without any diminution of sentence for good behavior. When the parolee has completed his full parole term, he shall be discharged from parole and shall be issued a final order of discharge by the board. A copy of this order shall be sent to the Department of Corrections to be made a matter of permanent record.” Amended by Acts 1968, No. 191, § 1.

. C.Cr.P. art. 893 et seq. provide the regulations for probation and its revocation.

. R.S. 15:574.9. “C. Except in the case of a parolee who has absented himself from the jurisdiction or from his place of residence, action revoking a parolee’s parole and recommitting him for violation of the condition of parole must be initiated before the expiration of his parole term. A parolee who has absented himself from the jurisdiction, or from his place of residence, shall be deemed a fugitive from justice.”

. R.S. 15:574.9. “E. When the parole of a pa- • rolee has been revoked by the board for the violation of the conditions of parole, the parolee shall be returned to the institution from which he was paroled and serve the remainder of his sentence as of the date of his release on parole, subject to consideration by the board of any commutation of the sentence, and any diminution of sentence earned for good behavior while in the institution. The parolee shall be given credit for time served prior to the revocation hearing whether such time is served in a local detention facility, state institution, or out-of-state institution, except that the parolee shall not receive credit for such time served prior to the revocation hearing where such hearing does not result in revocation, or the revocation is based on the subsequent conviction of a crime, in which case the parolee will receive credit for time served for the subsequent conviction pursuant to Code of Criminal Procedure Article 880.”